ORDERED.

Dated: September 30, 2021

_____
Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:                                                                              Case No: 3:20-bk-01514-JAF

Katherine Florence Behar Geller,

        Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      This Case came before the Court for trial upon the Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay against Greensky, LLC ("Greensky"), Greensky Administrative Services, LLC,[1] and Truist Bank (collectively, the "Creditors") (the "Motion for Sanctions") (Doc. 35).  In the Motion, the Debtor also alleges that the Creditors violated the discharge injunction.  The Debtor seeks actual damages, costs and attorney's fees, and punitive damages.  Upon conclusion of the trial, the Court elected to take the matter under advisement.  Upon the testimony and documentary evidence presented and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

---

[1] Following the conclusion of the trial, the parties entered a Motion for Approval of Stipulation to Dismiss Greensky Administrative Services, LLC. (Doc. 79), and an order granting the motion was subsequently entered. (Doc. 80).

## Findings of Fact

The Debtor filed a Chapter 7 bankruptcy petition on May 12, 2020. The Debtor's Schedule E/F lists Greensky as a creditor for two nonpriority unsecured claims.[2] (Doc. 4). The address listed for Greensky as to both claims is P.O. Box 29429, Atlanta, GA 30359 (the "Atlanta Address"). Greensky was the servicer for Truist Bank on both loans.

The creditor's matrix attached to the Notice of Commencement lists Greensky's address as P.O. Box 2153, Birmingham, AL 35287 (the "Alabama Address"), which is the payment address listed on the Debtor's monthly statements. Neither Greensky Administrative Services, LLC nor Truist Bank is listed on the creditor's matrix.

At the trial, Greensky's Director of Specialty Collections, Tracey Johnson-Kidd ("Ms. Johnson-Kidd"), testified that the Alabama Address is a "lockbox" that only payments should be sent to, and that account inquiries should be sent to the Atlanta Address. In support, Greensky relies on the verbiage in the Debtor's loan agreements and monthly statements that directs "[a]ll written statements concerning disputed amounts, including any check or other payment instrument" be sent to the Atlanta Address. (Cr.'s Exs. 1, 2) (Debtor's Exs. 19, 20). Although Greensky has since enacted new procedures, at the time of the Debtor's bankruptcy filing, Greensky did not have procedures in place at the Alabama Address to direct correspondence to the correct department.

On August 19, 2020, the Debtor received a discharge, and the case was closed. (Docs. 26, 27). Like the Notice of Commencement, the Discharge Order was mailed to the Alabama Address. (Doc. 28).

---

[2] The unsecured claim on account number ending in "5021" is listed in the amount of $7,257.91, and the unsecured claim on account number ending in "8936" is listed in the amount of $10,961.50. (Doc. 4).

On October 5, 2020, the Debtor filed a Motion to Reopen for the purpose of initiating litigation for a violation of the automatic stay and discharge injunction. (Doc. 29). The Court granted the motion, the case was reopened, and the Motion for Sanctions was filed on October 29, 2020. (Docs. 33, 35). Greensky filed a Response in Opposition to the Motion for Sanctions (the "Response"). (Doc. 58).

In the Motion for Sanctions, the Debtor alleges that she received post-petition collection calls and a collection letter[3] from Greensky in violation of the automatic stay and discharge injunction. Greensky does not dispute that the communication attempts occurred but maintains that its actions do not constitute a willful violation of the automatic stay or the discharge injunction. Greensky asserts it did not have actual knowledge that the stay was invoked because neither the Notice of Commencement nor the Discharge Order was properly processed because they were mailed to the Alabama Address instead of the Atlanta Address. Greensky maintains that the customer service teams handling the Debtor's accounts did not initially have knowledge of the bankruptcy case.

The Debtor testified that in response to the post-petition collections efforts, her counsel sent Greensky a letter to the Atlanta Address and via email, informing it of the bankruptcy case and advising that all collection efforts should cease.[4] At the hearing, however, Ms. Johnson-Kidd testified that despite a thorough search of Greesky's records, there is no record of the letter being

---

[3] The collection letter sent by Greensky to the Debtor contained the following notice: "BANKRUPTCY NOTICE: To the extent your original obligation was discharge[d] (sic), or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this letter is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt to impose personal liability for such obligation." (Debtor's Ex. 5).

[4] The July 27, 2020, letter by the Debtor's counsel states: "This letter serves as notice of the application of the automatic stay as to Debtor on this account #8936, as well as account #5021, that were included on Debtor's schedules. Any further phone calls and communications with Debtor shall be discontinued immediately or be deemed violations of the automatic stay for which appropriate action will be taken." (Debtor's Ex. 6). The letter was also emailed to Greensky at an email address referenced on the Debtor's monthly statements. (Debtor's Ex. 7).

received.[5]   Greensky's records did reflect, however, that between May 15, 2020, and September 18, 2020, Greensky made a total of twenty-eight telephone calls to the Debtor as collection attempts on her accounts. (Cr.'s Exs. 10, 11). At the hearing, some of the voicemails that Greensky left on the Debtor's phone were introduced into evidence, and the messages were courteous. (Cr.'s Exs. 3 - 9). The Debtor testified that, except for one time, she did not answer any of Greensky's phone calls, and, during the one call she answered, she did not inform the Greensky representative of her bankruptcy filing.

At the trial, the Debtor testified, that due to injuries sustained in a car accident, she has struggled for many years with detrimental cognitive effects including panic attacks, anxiety, and depression. In support, the Debtor moved to introduce into evidence medical records substantiating chronic conditions with which she has been diagnosed.[6] (Debtor's Ex. 15). The Debtor further testified that the post-petition phone calls from Greensky, which continued even after entry of her discharge, exacerbated her panic attacks and anxiety, and caused her emotional distress, gastrointestinal issues, and sleeplessness. The Debtor's partner, Lisa Young ("Ms. Young"), also testified as to how the phone calls detrimentally affected the Debtor's mental health and their household living environment.

Additionally, Ms. Young testified that in September of 2020, she contacted Greensky twice to request that it cease further communications with the Debtor. During these phone calls, Ms.

---

[5] No evidence was submitted to show that the envelope the letter was mailed in was properly addressed and had sufficient postage.

[6] At trial, Greensky objected to the Debtor's medical records being admitted into evidence based on the argument that the records date back in time to 2013-2018 and are therefore not relevant to the distress the Debtor alleges she suffered from Greensky's communication attempts. Greensky made the same objection to a doctor's note from 2013 that references the Debtor's reliance on her psychiatric service dog. (Debtor's Ex. 16). The Court reserved ruling on the objection at the trial. Upon review, the Court will admit the medical records for the *limited* purpose of showing that the Debtor has previously been diagnosed with chronic medical conditions. (Debtor's Ex. 15). The 2013 letter that references the Debtor's reliance on her service animal almost eight years ago is not relevant and will not be admitted into evidence.

Young identified herself as the Debtor and informed Greensky's customer service representatives of the pending bankruptcy proceeding. As a result of these calls, the bankruptcy was properly noted on both of the Debtor's accounts, and all communication with the Debtor ceased following Ms. Young's September 18, 2020, conversation with a Greensky representative.[7]

Although Greensky ceased all further communications, the Debtor filed a Motion to Reopen her bankruptcy case on October 5, 2020, for the purpose of initiating litigation for a willful violation of the automatic stay and the discharge injunction against Greensky. (Doc. 29). The case was subsequently reopened, and on October 29, 2020, the Motion for Sanctions was filed.[8]

### Conclusions of Law

"It is well established that the filing of a bankruptcy petition acts to automatically stay all efforts outside of bankruptcy ... to collect debts from a debtor who is under the protection of the bankruptcy court." Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1268 (11th Cir. 2014); see also 11 U.S.C. § 362(a)(3), (6). "In turn, § 362(k) provides that an 'individual injured by any willful violation of a stay provided [by § 362] shall recover actual damages, including costs and attorneys' fees ....'" Id.; 11 U.S.C. § 362(k). Historically, it has been held that "[a] violation of the automatic stay is willful if the party knew the automatic stay was invoked and intended the actions which violated the stay." Jove Eng'g v IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996). However, the majority of cases, in which specific intent to violate the automatic stay is not required, were decided prior to the United States Supreme Court's decision in Taggart v. Lorenzen, 139 S.Ct. 1795, 1801 (2019).

---

[7] When Ms. Young spoke to Greensky on September 9, 2020, she only referenced the Debtor's account ending in 8936 to the customer service representative. Because the Debtor's accounts were handled by different teams, this resulted in only one of the Debtor's accounts being properly notated until Ms. Young followed up with a second call on September 18, 2020.

[8] The parties attempted to resolve the matter through mediation, but the mediation resulted in an impasse. (Doc. 55).

The issue presented in Taggart arose not under § 362(k), but in the context of a violation of the discharge injunction. The Supreme Court held that a bankruptcy court "may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." Id. at 1804. "The standard is an objective one. A person, regardless of his subjective belief, may be subject to contempt sanctions when he violates the discharge order based upon an 'objectively unreasonable understanding' of the order's scope." In re Sanders, No. 8:20-BK-02731-RCT, 2020 WL 6020347, at *2–3 (Bankr. M.D. Fla. Sept. 15, 2020).

Following the Supreme Court's decision in Taggart, "some courts have assumed without deciding that 'willfulness' under § 362(k)(1) changed to include Taggart's 'fair ground of doubt' standard." In re Abril, No. 8:20-BK-08218-RCT, 2021 WL 3162637, at *4 (Bankr. M.D. Fla. June 24, 2021). The Court will not enter the debate on the issue of whether Taggart changed the "willfulness" standard under § 362(k) because, under either standard, the Court finds that Greensky's actions were willful. Therefore, for the reasons the Court explains herein, the Court finds that Greensky committed a willful violation of the automatic stay and the discharge injunction.

The Court begins its analysis by noting that Greensky does not dispute that it repeatedly attempted to contact the Debtor post-petition and post-discharge. Greensky argues, however, that its actions do not constitute a willful violation of the automatic stay or the discharge injunction because it did not have actual knowledge that the stay was invoked and that the Debtor had been discharged. In support of its position, Greensky asserts that the mailing of the Notice of Commencement and Discharge Order to the Alabama Address, where payments are processed, does not constitute "appropriate" notice under 11 U.S.C. § 342(a) because the loan documents and

6

the monthly statements provided that "[a]ll written communications *concerning disputed amounts*, including any check or other payment instrument" should be sent to the Atlanta Address. (emphasis added) (D's Exs. 19, 20). The Court disagrees. Section 342(a) requires that notices be "appropriate." Additionally, § 342(c)(2)(A) provides:

> If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least 2 communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.[9]

First, Greensky did not introduce evidence of communications sent to the Debtor within ninety days prior to the filing of her case that listed the address at which it requested to receive correspondence. The loan agreements introduced into evidence by Greensky are dated January 25, 2019, and May 6, 2019, and the monthly statements introduced into evidence by the Debtor are from the periods ending November 24, 2019, and December 11, 2019. (Cr.'s Exs. 1, 2) (Debtor's Exs. 19, 20). Further, even *if* the monthly statements the Debtor received within ninety days of the petition date contained identical language to the statements submitted into evidence, the provision that "[a]ll written communications *concerning disputed amounts*, including any check or other payment instrument" should be sent to the Atlanta Address is not sufficient for the Court to conclude that appropriate notice was not given pursuant to § 342(a). (Debtor's Exs. 19, 20). The verbiage on the monthly statements regarding "written communications" is not an unqualified statement but is specific to written communications concerning "disputed amounts." The Court also notes that neither the loan documents nor the monthly statements specify an address as to where bankruptcy notices should be sent.

---

[9] In cases where notice is *not* appropriate, § 342(g)(1) provides,"[n]otice provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) *shall not be effective notice* until such notice is brought to the attention of such creditor."

7

Ultimately, creditors "have a duty to establish procedures to avoid violating bankruptcy law" and "cannot avoid liability for a willful violation of the stay because they failed to properly keep records of bankruptcy notices." In re Govero, 439 B.R. 917, 922 (Bankr. S.D. Fla. 2010). The fact that, at the time of the Debtor's bankruptcy filing, Greensky did not have proper procedures in place to direct the Notice of Commencement and Discharge Order to the correct department does not allow it to avoid liability. Notably, Ms. Johnson-Kidd testified that Greensky has since changed its procedures for mail received and processed at the Alabama Address and that all mail received at that location is now scanned into the system, which allows the department that handles bankruptcy notices to access the document and process it correctly. Although the Court commends Greensky for implementing the new procedure, it does not absolve Greensky of liability for its failure to properly process the Notice of Commencement and the Discharge Order in the Debtor's case.

The Debtor also alleges that Greensky received notice of her bankruptcy case through a letter sent by her counsel to Greensky via email and by United States mail to the Atlanta Address. (Debtor's Exs. 6, 7). Greensky, however, disputes receiving the letter, and alleges that the "presumption of receipt" does not arise because the Debtor did not introduce evidence showing the letter was properly addressed and mailed with sufficient postage. See Konst. v. Fla. E. Coast Ry. Co., 71 F.3d 850, 851 (11th Cir. 1996) ("The 'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail."). Based on the evidence submitted, the presumption of receipt does not arise as to the letter because there was no proof submitted that the envelope was properly addressed, had sufficient postage, and was deposited into the mail. However, the letter was also emailed by Debtor's counsel to Greensky at

an email address provided on the Debtor's monthly statements.[10] (Debtor's Ex. 7). Upon review, the Court finds the presumption of receipt arises as to the letter sent by the Debtor's counsel to Greensky via email.

Greensky, however, asserts that the presumption of receipt is rebutted by the detailed testimony of Ms. Johnson-Kidd regarding its standardized procedures for processing correspondence and its "exhaustive" search for the letter.[11] As previously recognized by this Court:

> There is a rebuttable presumption that a properly mailed item is received by the addressee. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). Although a mere denial of receipt is insufficient to rebut the presumption of receipt, *In re Hobbs,* 141 B.R. 466, 468 (Bankr.N.D.Ga.1992), "[d]irect testimony of non-receipt, particularly in combination with evidence that standardized procedures are used in processing claims, [is] sufficient to support a finding that the mailing was not received, and thereby rebut the presumption accorded a proper mailing." *In re Dodd,* 82 B.R. 924, 928 (N.D.Ill.1987) citing *In re Yoder,* 758 F.2d 1114, 1118 (6th Cir.1985). However, not every standardized procedure is sufficient to rebut the presumption of receipt.

In re Hedetneimi, 297 B.R. 837, 841 (Bankr. M.D. Fla. 2003).

The Court finds the testimony of Ms. Johnson-Kidd to be very credible and detailed as to the procedures employed by Greensky and its "exhaustive" search for the letter. Even assuming, without deciding, that the presumption of receipt has been rebutted, the Court's finding that Greensky had actual knowledge of the Debtor's case is not altered.

---

[10] "When a defendant has produced evidence showing that it sent an item properly mailed, or in this case emailed, there arises a rebuttable presumption that it was received by the addressee." Corbin v. Affiliated Computer Servs., Inc., No. 6:13-CV-180-ORL-36, 2013 WL 3804862, at *6 (M.D. Fla. July 19, 2013); see also Abdullah v. American Express Co., No. 3:12–cv–1037, 2012 WL 6867675, at *5 (M.D. Fla. Dec. 19, 2012) ("While this case deals with electronic email rather than mail sent through the U.S. Postal System, the undersigned sees no reason why the same presumption of delivery would not be applicable.").

[11] Ms. Johnson-Kidd testified that after performing a thorough search of Greensky's records there is no record of the letter.

Accordingly, because Greensky had actual knowledge of the Debtor's bankruptcy case when it attempted to contact the Debtor, the Court finds that Greensky willfully violated the automatic stay and the discharge injunction.[12]  Pursuant to § 362(k)(1) of the Bankruptcy Code, the Debtor may recover from Greensky actual damages, including costs and attorney's fees, and, if appropriate, punitive damages.  With respect to the violation of the discharge injunction, although § 524 does not explicitly authorize monetary damages for a violation of the discharge injunction, a court may award actual damages pursuant to the statutory contempt powers set forth in 11 U.S.C. § 105.  In re Nibbelink, 403 B.R. 113, 119–20 (Bankr. M.D. Fla. 2009).  The Court will consider whether the Debtor is entitled to damages below.

**Emotional Distress**

To recover damages for emotional distress for a willful violation of the automatic stay or discharge injunction, a debtor must clearly establish that he suffered significant emotional distress and demonstrate a causal connection between the significant emotional distress and the violation.  In re Mclean, 794 F.3d 1313, 1325-1326 (11th Cir. 2015) (citing Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014)).  Previously, this Court has held that a debtor seeking actual damages resulting from a violation of the automatic stay or discharge injunction must prove that the resulting emotional distress is more than fleeting, inconsequential, and medically insignificant.  In re Nibbelink, 403 B.R. at 120; In re Hedetneimi, 297 B.R. 837, 842 (Bankr. M.D. Fla. 2003).  However, "corroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent."  Lodge, 750 F.3d at 1272 (citing Dawson v. Wash. Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139,

---

[12] The Court's finding is limited solely to Greensky.  The evidence does not support a finding that Truist Bank (formerly Sun Trust Bank) violated the automatic stay or discharge injunction.  Greensky as the servicer on the Debtor's loans, for which Truist Bank was the lender, initiated *all* communications with the Debtor.

1149-50 (9th Cir. 2004)); see also In re Nibbelink, 403 B.R. at 120 ("In the absence of conduct of such an egregious or extreme nature that emotional distress would be expected to occur, a debtor must present some medical or other corroborating evidence showing they suffered more than fleeting and inconsequential distress, embarrassment, humiliation, and annoyance.").

The Debtor testified that, due to injuries sustained in a car accident, she has struggled for many years with detrimental cognitive effects including panic attacks and anxiety. The Debtor further testified that the post-petition phone calls and letter from Greensky exacerbated her pre-existing medical issues, and caused her severe emotional distress, gastrointestinal issues, and sleeplessness. Although the Debtor submitted medical records from 2013 to 2018 that show she suffers from chronic mental health conditions, no contemporaneous corroborating medical records were introduced to show the extent of distress that the Debtor suffered because of the violation of the automatic stay and discharge injunction.[13] However, the Debtor's partner, Ms. Young, corroborated through her testimony that Greensky's attempts at communication with the Debtor detrimentally affected the Debor's mental health and their household living environment on an ongoing basis during this time period. Specifically, Ms. Young testified that she started noticing changes in the Debtor's behavior in July 2020 but did not initially know what to attribute the anger, fearfulness, and mood swings to until she saw a letter addressed to the Debtor from Greensky. Ms. Young also corroborated the Debtor's testimony that she suffers from chronic mental health issues that include anxiety and panic attacks, and that her ability to retain and comprehend information is affected.

The Court rarely awards emotional distress damages for violations of the automatic stay or discharge injunction. Whether the Debtor is entitled to an award of emotional distress damages is

---

[13] The Debtor testified that the therapist she used previously was unavailable for counseling, and that she did not want to take medication because of the negative side effects she experienced in the past.

questionable because Greensky's conduct was neither egregious nor extreme. Although the Debtor has a past medical history of chronic mental health issues, including anxiety and depression, she did not produce corroborating medical evidence to show the extent of the distress she suffered because of Greensky's communication attempts. However, the Court finds the testimony of the Debtor and Ms. Young to be credible and detailed as to the detrimental emotional and physical effects the Debtor suffered and is therefore satisfied that such effects were not fleeting or inconsequential. Therefore, based on the testimony presented, coupled with the fact that the Debtor has a documented history of chronic mental health issues, the Court will award the Debtor $1,000.00 in emotional distress damages.[14]

## Punitive Damages

Punitive damages operate as both a punishment for wrongful conduct and as a deterrent of future wrongful conduct. In re Ferris, 611 B.R. 701, 709 (Bankr. M.D. Fla. 2019). The imposition of punitive damages for a violation of the automatic stay is appropriate where the violator acts in an "egregious intentional manner." In re Hedetneimi, 297 B.R. at 843. The same standard applies for a violation of the discharge injunction. See In re Nibbelink, 403 B.R. 113, 122 (Bankr. M.D. Fla. 2009). Because the Court has already found that Greensky's conduct was not egregious, the Court will not impose punitive damages.

---

[14] Although the Court is awarding damages, the Debtor's failure to mitigate by not answering the phone calls and simply informing Greensky of her bankruptcy case was taken into consideration by the Court. The Court cautions future litigants that the failure to mitigate may result in damages either not being awarded or reduced. See e.g., In re McGregor, 606 B.R. 460, 465 (Bankr. M.D. Fla. 2019) ("Courts around the country, including bankruptcy courts in this district, have recognized that debtors have a duty to mitigate damages resulting from a stay violation."); Fravala v. E Holdings, Ltd. (In re Fravala), 2017 WL 3447936, at *4 (Bankr. M.D. Fla. Aug. 10, 2017) (explaining that a "debtor claiming an injury under § 362(k), however, 'has a duty to mitigate damages that may occur as a result of a stay violation'"); In re Yantis, 553 B.R. 351, 355 (Bankr. N.D. Ind. 2016) (explaining that debtors "faced with violations of the stay have a duty to mitigate their damages"); In re Oksentowicz, 324 B.R. 628, 630 (E.D. Mich. 2005) (quoting Clayton v. King, 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998)) ("Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations.").

**Attorney's Fees**

The Debtor seeks attorney's fees and costs of $15,686.05.[15]  Attorney's fees awarded pursuant to § 326(k)(1) must be reasonable and necessary.  In re Thigpen, No. 3:07-BK-05626-JAF, 2009 WL 10742947, at *7 (Bankr. M.D. Fla. Mar. 30, 2009).  "The policy of section [362(k)], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation."  In re Robinson, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998) (citing Putnam v. Rymes Heating Oils, Inc. (In re Putnam), 167 B.R. 737, 741 (Bankr. D. N.H. 1994)).  The same policy applies to violations of the discharge injunction. The sound policy behind this reasoning is further articulated as follows:

> While the protections afforded by the automatic stay are fundamental and essential to the functioning of the bankruptcy system, it is imperative not to lose sight of both the purpose of the law and the equally important need to encourage efficiency in the bankruptcy system. Courts have recognized the importance of striking a balance between the protection of debtors and effective use of the bankruptcy court's time and resources.  In doing so, Courts have opined that parties should take necessary action toward resolution before seeking the intervention of the bankruptcy court.

In re Glenn, 616 B.R. 429, 436–37 (Bankr. S.D. Ala. 2020) (internal citations omitted).  The court in Glenn additionally stated that "notions of good faith, sound judgment and professionalism should prevail favoring resolution when possible and litigation only when actually necessary to remedy a stay violation."  Id. at 437.

The Court agrees with the sentiments expressed in Glenn.  Although the Debtor's counsel wrote a letter to Greensky on July 27, 2020, asking it to cease communications, she was subsequently made aware by Ms. Young that the Debtor's bankruptcy had not been notated on the

---

[15] The Debtor's attorney asserts that she spent 44.1 hours on this matter at an hourly rate of $350.00, for total fees of $15,435.  She also requests costs in the amount of $251.05.  (Doc. 71, Ex. B).

Debtor's accounts prior to Ms. Young's conversations with Greensky representatives on September 18, 2020. Upon learning that the Debtor's accounts had not been properly notated, the reasonable course of action, especially since all communications from Greensky had stopped, would have been for Debtor's counsel to contact Greensky to discuss the events that had transpired and attempt to work out a resolution prior to filing the Motion to Reopen and the Motion for Sanctions. Notably, the Motion for Sanctions was filed almost a month and a half after Greensky's communications had ceased. The decision to litigate without first attempting to resolve the issue has resulted in the expenditure of substantial time and resources of the Court, and a disproportionate amount of legal fees being incurred compared to what would have been required if mitigation efforts had been employed prior to the filing of the litigation.[16]

For these reasons, the Court finds a reduction in the attorney's fees requested by the Debtor's counsel is appropriate. To be clear, the reduction in attorney's fees is no way related to the skills, experience, and reputation of the Debtor's counsel. In fact, the Court notes that counsel for both parties were well prepared and professional at the trial and submitted well written post-trial briefs. The reduction of fees is due to the failure of the Debtor's counsel to take reasonable action to engage in mitigation efforts prior to initiating litigation. This is especially true since all communications from Greensky had ceased prior to the litigation being initiated.

---

[16] Although the parties participated in a mediation that was handled by a very capable mediator, an impasse was reached. Although the Court is slightly perplexed as to why this matter was not resolvable, the scope and tone of the litigation by the time it reached mediation, in addition to the legal fees incurred, were likely quite different than if the Debtor's counsel had simply reached out to Greensky to resolve the matter instead of immediately initiating litigation. As stated by the court in Glenn, "this Court agrees with decisions explaining that Section 362(k)(1) is intended as a shield, not a sword and finds that when Debtor's Counsel files precipitous litigation without even attempting resolution beforehand, it is consistent with principles of equity and sound public policy to limit attorney's fees to those that would have been required if mitigation efforts had been exercised." In re Glenn, 616 B.R. at 437.

Therefore, it is appropriate to limit the Debtor's counsel's fees under § 362(k)(1) to the amount of time reasonably required to remedy the stay violation. Upon consideration of the lodestar method, the facts of this case do not justify the forty-four (44) hours of billable time sought by the Debtor's counsel. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–18 (5th Cir. 1974); see also In re Nibbelink, 403 B.R. 113, 122 (Bankr. M.D. Fla. 2009) ("In determining whether an attorney's fee is reasonable, a court must determine the lodestar, the product of the number of hours reasonably expended and a reasonable hourly rate."). The compensation awarded to the Debtor's counsel should be more proportionate to the amount of time and effort that was reasonably needed to resolve the violation of the automatic stay and discharge injunction. Based on the facts of this case, the Court finds that even under a *very* generous analysis, the case could have been resolved in no more than fifteen (15) hours of billable time. Accordingly, the fees requested in the amount of $15,435.00 for 44.1 hours of billable time will be reduced to fifteen (15) hours. Therefore, the Court will award attorney's fees in the amount of $5,250.00, as well as costs of $251.05.

## Conclusion

For the reasons stated, the Court finds Greensky willfully violated the automatic stay and discharge injunction. As a result, the Debtor is entitled to damages, including damages for emotional distress and attorney's fees. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.